# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LAMONT O. DOUGLAS, et al.,
    Plaintiffs

    v.

ROBERT A. RATLIFF, et al.,
    Defendants

Case No. 1:09-cv-060
Weber, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Lamont O. Douglas is an inmate at the Red Onion State Prison in Pound,

Virginia. Plaintiff Carlos Davis is Lamont's uncle and plaintiff Charmaine Douglas is Lamont's

mother. Plaintiffs bring this civil action pro se against defendants Robert A. Ratliff, H. Wesley

Robinson, Mark Konerman, and John and Jane Does alleging numerous claims in connection

with a contract for legal services. This matter is before the Court on plaintiff Lamont Douglas's

motion to supplement RICO claim (Doc. 26), defendants' memorandum in opposition thereto

(Doc. 27), and plaintiff's reply memorandum. (Doc. 31). This matter is also before the Court on

defendants' motion to dismiss and/or for summary judgment under Rules 12(b)(6) and 56, Fed.

R. Civ. P. (Doc. 25), plaintiffs' memorandum in opposition (Doc. 30), and defendants' reply

memorandum. (Doc. 34).

Plaintiffs' complaint and supplements thereto (Docs. 1, 8, 9) allege the following facts:

In September 2006, plaintiff Lamont Douglas decided to retain the services of the National Legal

Professional Associates (NLPA), an Ohio legal research business, to assist him in his post-

conviction proceedings. Plaintiffs Carlos Davis and Charmaine Douglas provided the financing

for this endeavor. Mr. Davis and Ms. Douglas spoke with Wesley Robinson, Director of Client

Services of NLPA, and were mailed a contract. In September 2006, Lamont received a letter from NLPA advising him that the fee to supplement his current motion to vacate was $3,500.00. (Doc. 1, Exh. B). In December 2006, Lamont received a letter from defendant Robinson indicating that the price had increased to $6,500.00. (Doc. 1, Exh. B). Plaintiffs made payments to obtain a case evaluation by NLPA and representation in an appeal. (Doc. 1, Exh. C).[1] Plaintiffs state they were urged to pay the fee in a prompt manner so as not to miss any deadlines. Plaintiffs state the case evaluation was lacking and that defendant Ratliff, the attorney who was retained to represent Lamont in the Virginia state courts, missed two filing deadlines in the Virginia Supreme Court. Plaintiffs state that after Ratliff missed these deadlines, he advised plaintiffs he could represent them on appeal for $8,000.00 with the assistance of NLPA and $17,000.00 without the assistance of NLPA. When plaintiffs rejected his offer of assistance, Ratliff started to make "threats of court action" to collect on services he did not perform.

Plaintiffs state that in September 2007, defendant Konerman, a case manager with NLPA, then used $1000.00 of plaintiffs funds without their authorization and drafted a legal research memorandum in an attempt to persuade plaintiffs to continue to retain Ratliff's services. (Doc. 1, Exh. E). Plaintiffs nevertheless reiterated they did not want Ratliff's services. Plaintiffs state that Ratliff and NLPA failed to perform their contractual obligations. As relief, plaintiffs seek compensatory and punitive damages, as well as injunctive relief.

Plaintiffs Carlos Davis and Charmaine Douglas's supplement to the complaint (Doc. 9)

---

[1] It is not entirely clear how much plaintiffs actually paid. The affidavit of Carlos Davis and Charmaine Douglas indicates a payment of $2000.00 was made sometime in 2006. (Doc. 1, Aff. at p.4). A June 2007 letter from NLPA to Mr. Davis acknowledges another payment of $1,000.00. (Doc. 1, Exh. E). Plaintiffs state they signed a promissory note for $8,000.00. (Doc. 1, Aff. at 5). Receipts attached to defendants' motion to dismiss and/or for summary judgment total an amount of $7,000.00 to NLPA. (Doc. 25, Exh. 1).

alleges "special circumstances" which they assert "gave rise to a duty of disclosure" between plaintiffs and defendants Wesley Robinson and NLPA. Plaintiffs allege that they entered into a "suretyship" with Robinson and NLPA who were obligated to find a qualified lawyer to represent Lamont. They allege that Robinson and NLPA breached this relationship when they secured the services of Attorney Ratliff, who was not licensed to practice law in Virginia and who would need to obtain local counsel for purposes of representing Lamont in a Virginia court. Plaintiffs allege that they were then obligated to pay an additional fee for local counsel's services. Plaintiffs allege that defendants failed to disclose the need for local counsel in an attempt to deceive plaintiffs into paying a $2,000.00 fee to Ratliff up front for his services, and a $4,500.00 fee to NLPA to supplement Lamont's post-conviction motion. Plaintiffs allege that local counsel's services were available for a fee of $1,500.00, compared to Attorney Ratliff's fee of $8,000.00, and that defendants used their position to defraud plaintiffs out of "their extra funds beyond what was necessary." (Doc. 9, ¶9, A.). Plaintiffs allege the failure to disclose was a proximate cause of plaintiffs' damages, which included loss of income, humiliation, grief, pain, loss of contractual rights, loss of services, loss of consortium, extortion, inconvenience, and delay. (Doc. 9, ¶8).

## I. Plaintiff Lamont Douglas's motion to supplement RICO claim (Doc. 26) should be denied.

Plaintiff Lamont Douglas's motion to supplement RICO claim seeks "to amend John Doe(s) and Jane Doe(s) in original complaint to be National Legal Professional Associates collectively (hereinafter NLPA) and to supplement their RICO claim against NLPA, Ratliff, Robinson, and Konerman pursuant to Rule 15 of the Fed. R. Civ. P." (Doc. 26 at 1). While leave

3

to amend a complaint should be liberally granted, *Foman v. Davis*, 371 U.S. 178 (1962), the Court may deny the motion to amend where the complaint, as amended, could not withstand a motion to dismiss. *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994); *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation, Department of Housing and Urban Development, City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980). For the reasons that follow, the motion to amend should be denied.

As an initial matter, the Court notes that the motion is signed by only Lamont Douglas. The Court previously notified plaintiffs in its Order of May 11, 2009 (Doc. 29) that Mr. Douglas is not a lawyer and may not represent the other individual plaintiffs in this matter. *See Powerserve International, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001); *Bonacci v. Kindt*, 868 F.2d 1442, 1443 (5th Cir. 1989); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830-31 (7th Cir. 1986); *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982). *See also Smith v. Dukes*, 21 Fed. Appx. 344, 2001 W.L. 1177855 (6th Cir. 2001); *Harrison v. Seay*, 856 F. Supp. 1275, 1279 (W.D. Tenn. 1994). Since the motion to supplement is not signed by Carlos Davis or Charmaine Douglas, it is deemed to be filed on behalf of Lamont Douglas only and not on behalf of the other pro se plaintiffs.

Mr. Douglas seeks to amend the complaint to allege claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (hereinafter RICO), specifically §§ 1962(c) and (d). Section 1964 of Title 18 provides civil remedies to those persons injured in their business or property by the activities proscribed by 18 U.S.C. § 1962. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in"

4

activities affecting "interstate or foreign commerce . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Mr. Douglas's request to amend the complaint to add a RICO claim should be denied because such amendment would not survive a motion to dismiss and would therefore be futile. First, Mr. Douglas does not have standing to raise a RICO claim on his own behalf because he has not alleged any facts showing he was "injured in his business or property by reason of a violation of section 1962." *See* 18 U.S.C. § 1964(c). "[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). The gist of Mr. Douglas's RICO claim is that defendants defrauded plaintiffs out of their money through defendants' schemes. However, Mr. Douglas must show he personally suffered a concrete financial loss. *See Saro v. Brown,* 11 Fed. Appx. 387, 389 (6th Cir. 2001) (citing *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1310 (9th Cir. 1992) (holding that "injury" requires proof of concrete financial loss); *Oscar v. Univ. Students Co-op. Assn.,* 965 F.2d 783, 785-87 (9th Cir. 1992) ("injury" must consist of concrete financial loss, and not injury to a valuable, but intangible, property interest)). *See also Diaz v. Gates,* 380 F.3d 480, 483 (9th Cir. 2004). While Carlos Davis and Charmaine Douglas paid funds to secure legal assistance on behalf of Lamont Douglas, Mr. Douglas has not shown that he personally suffered any injury to his property or business as a result of an alleged RICO violation. Therefore, he is without standing to bring a RICO claim.

Assuming Mr. Douglas's claim is construed to allege he was injured by being deprived of

5

a timely filed post-conviction motion, such an injury does not constitute a business or property injury under RICO. *See Saro*, 11 Fed. Appx. at 389 (prison inmate had no standing to sue former criminal attorney under RICO for attorney's alleged failure to timely file post-conviction motion). Personal injuries and mental suffering do not confer a person with standing to bring a RICO claim because those types of damages are not injuries to "business or property." *See Fleischhauer v. Feltner,* 879 F.2d 1290, 1300 (6th Cir. 1989), *cert. denied,* 493 U.S. 1074 (1990). Therefore, Mr. Douglas lacks standing to seek a civil remedy under RICO.

In any event, the complaint, as amended, would nonetheless fail to state a civil cause of action under § 1962(c) or (d) of RICO. To state a RICO action under § 1962(c), plaintiff must allege facts showing 1) two or more predicate offenses; 2) the existence of an "enterprise;" 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds*, 128 S.Ct. 2131 (2008).

Plaintiff's supplement fails to allege facts demonstrating the defendants engaged in a pattern of racketeering activity. "A 'pattern of racketeering activity' requires related predicate acts of racketeering which continued during a substantial period or which by their nature forebode of future criminal conduct." *Pik-Coal Co. v. Big Rivers Elec. Corp.,* 200 F.3d 884, 890 n.10 (6th Cir. 2000) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240-43 (1989)). "[T]he pattern requirement is satisfied by showing (1) a relationship between the predicate acts and (2) the threat of continued activity." *Saglioccolo v. Eagle Insurance Co.*, 112 F.3d 226, 229 (6th Cir. 1997) (citing *H.J. Inc.*, 492 U.S. at 240).

6

Plaintiff has failed to allege facts showing the element of continuity essential to a viable RICO claim. The requirement of continuity ensures that actionable RICO claims are limited to long-term criminal conduct. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134-35 (6th Cir.), *cert. denied*, 513 U.S. 1017 (1994). The Supreme Court in *H.J., Inc.* stated that "'[c]ontinuity' is both a closed-and-open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Continuity "may be established at the pleading stage by alleging acts of either closed- or open-ended racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006).

The open-ended continuity requirement can be established either by "a specific threat of repetition [of the predicates act] extending indefinitely into the future," or by "showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *See H.J., Inc.*, 492 U.S. at 242-43. Here, Mr. Douglas fails to allege any facts showing that the threat of the predicate acts (which he identifies as mail fraud and extortion) will specifically extend into the future. At best, plaintiff alleges a single scheme–to fraudulently induce plaintiff and his family members to purchase legal services. There are no allegations that once the services were procured, the scheme would somehow continue indefinitely into the future.

A closed period of continuity may be pleaded through facts showing "a series of related predicates extending over a substantial period of time." *Moon*, 465 F.3d at 724 (quoting *H.J., Inc.*, 492 U.S. at 242). Even assuming plaintiff's conclusory allegations of mail fraud and extortion are sufficient to establish predicate acts, plaintiff still fails to show a pattern of racketeering activity. A single fraudulent scheme with a single objective to deprive plaintiffs of

7

their money does not establish a closed period of continuity. *Moon*, 465 F.3d at 725. Moreover, the number of predicate acts are minimal and lasted for at most 13 months–from September 22, 2006 when defendant Robinson sent a letter to Carlos Davis requesting funds to assist Lamont and his attorney (Doc. 1, Exh. A) to November 7, 2007 when defendant Konerman sent a letter to Lamont enclosing a copy of a September 2007 legal memorandum. (Doc. 1, Exh. E). *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.) (activities which transpired within a seventeen month span inadequate to comprise a "pattern of racketeering activity"), *cert. denied*, 513 U.S. 1017 (1994). *See also Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006) (predicate acts over nine month period or even over two-year period insufficient where a single objective); *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) (holding that "twelve months is not a substantial period of time" for purposes of establishing pattern of racketeering activity), *cert. denied*, 504 U.S. 955 (1992); *J.D. Marshall International, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (concluding that thirteen months is not substantial under RICO); *Menasco v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (holding that predicate acts with single goal occurring over one-year period do not form pattern); *Griffin v. NBD Bank*, 43 F. Supp.2d 780, 788-89 (W.D. Mich. 1999) (alleged fraudulent scheme lasting twelve months too short to establish continuity requirement). Mr. Douglas's proposed RICO claim falls short of alleging a pattern of racketeering activity for purposes of a § 1962(c) claim and would not withstand a motion to dismiss.

Mr. Douglas's RICO conspiracy claim under § 1962(d) also fails. Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Because Mr. Douglas fails to state a substantive RICO

claim under § 1962(c), he necessarily fails to state a RICO conspiracy claim under Section 1962(d). *See Craighead v. E.F. Hutton*, 899 F.2d 485, 495 (6th Cir. 1990); *Miller v. Norfolk Southern Ry. Co.*, 183 F. Supp.2d 996, 1003 (N.D. Ohio 2002). Therefore, plaintiff Douglas's motion to supplement the complaint to add a RICO claim (Doc. 26) should be denied.

Plaintiff Douglas also seeks to amend the complaint to name NLPA as a defendant in this action. Defendants object to the motion, stating that the motion is untimely and that NLPA has never been served with process in this case.

For the reasons explained more fully below, an amendment of the complaint to name NLPA as a defendant would be futile because plaintiffs' complaint, as amended, would be subject to dismissal. Even if NLPA were named as a defendant, this matter should be dismissed because plaintiffs fail to establish viable claims under federal and state law, and the Court lacks jurisdiction over plaintiffs' remaining state law breach of contract claim. Therefore, the motion to amend the complaint to name NLPA as a defendant should be denied.

## II. Defendants' motion to dismiss and/or for summary judgment should be granted.

Since both parties have presented materials outside the pleadings in support of and in opposition to defendants' motion to dismiss and/or for summary judgment, the Court proceeds under Rule 56. *See* Fed. R. Civ. P. 12(d). A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the

9

action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. Defendants need not support their motion with evidence disproving plaintiffs' claims. Rather, defendants need only point out there is an absence of evidence supporting plaintiffs' claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp., 477* U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs' complaint and supplements thereto allege numerous causes of action against the defendants. Defendants seek judgment on all claims alleged against them, arguing that the complaint and supplements thereto fails to state a claim upon which relief may be granted and/or that the Court lacks federal jurisdiction over such claims. The Court shall address each claim in turn.

## PLAINTIFFS' FEDERAL LAW CLAIMS[2]

### RICO

As explained above, plaintiffs' complaint and proposed supplement thereto fail to establish a claim for relief under the federal RICO statute. Therefore, defendants' motion on plaintiffs' RICO claim should be granted.

### 42 U.S.C. § 1981

Section 1981 "prohibits racial discrimination during the scope of a private contractual relationship. . . ." *Boinapally v. University of Tenn.,* 23 Fed. Appx. 512, 515 (6th Cir. 2001). Plaintiffs fail to establish a claim for relief under 42 U.S.C. § 1981 because plaintiffs fail to allege facts or present evidence indicating they were discriminated against on the basis of their race. *See Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001) (citing *Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 613 (1987)). Therefore, summary judgment is warranted on this claim.

### 42 U.S.C. § 1983

Plaintiffs' allegations are insufficient to establish an actionable claim under § 1983. In

---

[2] Title 28 U.S.C. § 1343, one of the statutes cited by plaintiffs in their complaint, confers federal jurisdiction in civil rights cases for claims under the substantive civil rights statutes, such as Section 1983. It does not, however, establish an independent cause of action upon which plaintiffs may obtain relief.

11

order to state a § 1983 claim, plaintiffs must allege that defendants acted under color of state law and that defendants deprived plaintiffs of some right secured by the Constitution or laws of the United States. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)). Defendants are private individuals who cannot be found to have been acting under color of state law for purposes of § 1983 liability. As private citizens, defendants cannot deprive plaintiffs of their constitutional rights. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149 (1978); *Hudgens v. NLRB*, 424 U.S. 507 (1976)). Section 1983 does not create a cause of action against a private actor "'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Nor do plaintiffs allege facts showing that the actions of these private defendants "so approximate state action that they may be fairly attributed to the State." *Lansing,* 202 F.3d at 828 (citation omitted). Therefore, defendants' motion should be granted on plaintiffs' claims under 42 U.S.C. § 1983.

## 42 U.S.C. § 1985(2) and (3)

To establish a claim for relief under the second part of section 1985(2), which proscribes conspiracies to deny or interfere with equal protection rights, plaintiffs must show some racial or other class-based discriminatory animus. *See Ellison v. Leffler*, No. 93-2606, 1994 W.L. 276926, at \*\*2 (6th Cir. June 21, 1994) (citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *Bennett v. Batchik*, No. 90-2036, 1991 W.L. 110385, at \*6 (6th Cir. 1991)). Plaintiffs must show that the challenged conduct either classifies persons in terms of their ability to exercise a fundamental

12

right or establishes a classification based upon race, national origin, alienage, illegitimacy, or gender. *Willing v. Lake Orion Community Schools Bd. Of Trustees*, 924 F. Supp. 815, 819 (E.D. Mich. 1996). Because plaintiffs do not identify the existence of an invidious class, they fail to establish a claim for relief under section 1985(2).

To maintain an action under 42 U.S.C. § 1985(3) plaintiffs must allege and prove a conspiracy for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, as well as an act in furtherance of the conspiracy whereby a person is injured in his person or property or is deprived of any right or privilege of a United States citizen. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Section 1985(3) provides no substantive rights; rather, it provides a remedy for the violation of the rights therein designated. *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 372 (1979). Plaintiffs' complaint fails to allege facts showing any alleged conspiracy was motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus" for purposes of their claim for relief under § 1985(3). *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (quoting *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 829 (1983)). Since one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims, *Celotex,* 477 U.S. at 323-24, plaintiffs' § 1985(3) claim must be dismissed.

## 42 U.S.C. § 1986

Plaintiffs also allege a claim for relief under 42 U.S.C. § 1986. Section 1986 establishes a cause of action against persons who have knowledge of a conspiracy under § 1985, and "having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."

13

42 U.S.C. § 1986. However, if a "plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac,* 906 F.2d 220, 227 (6th Cir. 1990). Since plaintiffs fails to state a conspiracy claim under § 1985, they have likewise failed to state a claim for relief under 42 U.S.C. § 1986.

## Federal criminal statutes

Plaintiffs assert claims under 18 U.S.C. §§ 241 and 242, two provisions of the federal criminal code proscribing the violation of an individual's civil rights. These statutes do not provide a private cause of action or basis for civil liability. *See U.S. v. Oguaju*, 76 Fed. Appx. 579 (6th Cir. 2003); *Bybee v. Pirtle,* No. 96-5077, 1996 WL 596458, at *1 (6th Cir. Oct. 16, 1996); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989); *Newcomb v. Ingle,* 827 F.2d 675, 676 n.1 (10th Cir. 1987); *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980); *Purk v. United States,* 747 F. Supp. 1243, 1248 (S.D. Ohio 1989). Therefore, defendants' motion should be granted on plaintiffs' claims under 18 U.S.C. §§ 241 and 242.

## Magnuson-Moss Warranty-Federal Trade Commission Improvement Act

Plaintiffs allege a claim under 15 U.S.C. §§ 2301-2312. The Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq., "sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." *Temple v. Fleetwood Enterprises, Inc.*, 133 Fed. Appx. 254, 268 (6th Cir. 2005) (citing 15 U.S.C. §§ 2301-2312). The complaint fails to state a claim for relief under this federal law because the Act applies only to the sale of consumer products, a term that means "tangible personal property which is distributed in commerce and which is normally used for personal, family, or household

14

purposes." 15 U.S.C. § 2301(1). *See Russo v. NCS Pearson, Inc.*, 462 F. Supp.2d 981, 998 (D. Minn. 2006); *Kemp v. Pfizer*, 835 F. Supp. 1015, 1024 (E.D. Mich. 1993). Plaintiffs challenge the adequacy of legal services provided to Lamont, not the provision of consumer goods. Since the Act does not apply to the sale of services, this claim should be dismissed.

## PLAINTIFFS' STATE LAW CLAIMS

### Ohio Rev. Code § 1302.15 (UCC 2-302)

To the extent plaintiffs allege claims under Ohio Rev. Code § 1302.15 (UCC 2-302), governing an unconscionable contract or clause, the complaint fails to state a claim for relief because that provision of the Ohio Revised Code applies only to the sale of goods, and not to the sale of services as in this case. *See Cavanaugh v. Nationwide Mut. Ins. Co.*, 65 Ohio App.2d 123, 416 N.E.2d 1059 (Ohio App. 9th Dist. 1976).

### Ohio Rev. Code § 1301.09 (UCC 1-203)

"Every contract or duty within . . . [the UCC] imposes an obligation of good faith in its performance or enforcement." Ohio Rev. Code § 1301.09. However, "[t]he duty to act in 'good faith' is an implicit term of every contract, and cannot stand alone as a separate cause of action, independent of the underlying claim for breach." *Eggert Agency, Inc. v. NA Management Corp.*, No. 2:07-cv-1011, 2008 WL 3474148, at *3 (S.D. Ohio Aug. 12, 2008) (citing *Lakota v. Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App.3d 637, 646, 671 N.E.2d 578 (Ohio App. 6th Dist. 1996); *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007 WL 4532689, at *5 (Ohio App. 10th Dist. Dec. 27, 2007) (internal citations omitted)). Therefore, a party may not maintain a separate cause of action for a breach of the duty of good faith and fair dealing in addition to a breach of contract claim. *Eggert Agency*, 2008 WL 3474148, at *3 (citing *Northeast Ohio*

15

*College of Massotheraphy v. Burek*, 144 Ohio App.3d 196, 204, 759 N.E.2d 869 (Ohio App. 7th Dist. 2001); *Lakota,* 108 Ohio App.3d at 646, 671 N.E.2d at 584; *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 105, 483 N.E.2d 150 (1985)). Accordingly, plaintiffs have no claim under Ohio Rev. Code § 1301.09.

## Fraudulent Non-Disclosure

Plaintiffs Carlos Davis and Charmaine Douglas allege a claim for fraudulent non-disclosure against NLPA and Wesley Robinson. (Doc. 9). Plaintiffs' fraudulent non-disclosure claim is somewhat confusing. As best the Court can discern from the complaint, supplement and plaintiffs' response to defendants' motion, plaintiffs allege that during their initial discussions with Robinson concerning the retention of a lawyer, Robinson claimed that Attorney Ratliff was "the best man for the job" and recommended Ratliff to plaintiffs. (Doc. 1, Aff. of Carlos Davis and Charmaine Douglas at 4). Because Robinson stressed that "time was of the essence," plaintiffs agreed to pay Ratliff $2,000.00 up front without seeing the contract for Ratliff's services. However, Robinson and NLPA failed to disclose that Attorney Ratliff was not licensed to practice law in the state of Virginia and, as a result, the services of a local attorney would be required before Ratliff could represent Lamont in the state courts. The retention of local counsel would necessitate the payment of additional moneys not disclosed to plaintiffs when they first agreed to secure the legal services of Ratliff. Plaintiffs assert that Robinson and NLPA were their agents "in connection with contractual services of N.L.P.A." and were under a duty to find an appropriately qualified lawyer. (Doc. 9, ¶1). Plaintiffs allege the nondisclosure was material to their decision to hire and pay $2,000.00 to Ratliff "without seeing the contract," as well as to their decision to hire NLPA to supplement Lamont's post-conviction motion for a $4,500.00 fee.

16

(Doc. 9, ¶4). Plaintiffs state that when they received the promissory note and retainer agreement dated January 23, 2007 from Ratliff, they were notified for the first time that the services of a local Virginia attorney at a rate of $1,500.00 would be required. *Id.* Plaintiffs telephoned Ratliff to inquire about the services of a local Virginia attorney and the money they had already paid him. Ratliff allegedly replied he "did not want the case anyway." (*Id.* at 5). Plaintiffs became angered and "all ties were severed" with Ratliff. *Id.* Plaintiffs assert the foregoing facts establish a claim for relief under Ohio law for fraudulent nondisclosure.

A common law fraud claim consists of the following elements:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083 (1991). *See also Groob v. KeyBank,* 108 Ohio St.3d 348, 357, 843 N.E.2d 1170 (2006); *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998). When, as here, allegations of nondisclosure are alleged, liability only arises when there is a duty to disclose. *Miles v. McSwegin*, 58 Ohio St.2d 97, 99, 388 N.E.2d 1367, 1368 (1979); *Applegate v. Fund for Constitutional Govt.*, 70 Ohio App.3d 813, 819, 592 N.E.2d 878, 882 (Ohio App. 10th Dist. 1990). An agency relationship may give rise to the duty to disclose. *See Miles v. Perpetual Savings & Loan, Co.,* 58 Ohio St.2d 93, 95, 388 N.E.2d 1364, 1365 (1979).

Plaintiffs allege that they entered into an agent-principal relationship with NLPA and Robinson by virtue of the contract with NLPA. They state that pursuant to this relationship,

17

Robinson and NLPA, as their agents, were charged with the duty to find a qualified lawyer.

An agency relationship is a consensual relationship created by an express or implied agreement between the parties. *Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 483-484, 737 N.E.2d 68, 79 (Ohio App. 2nd Dist. 1999) (citing *Johnson v. Tansky Sawmill Toyota, Inc.*, 95 Ohio App.3d 164, 642 N.E.2d 9 (Ohio App. 10th Dist. 1994)). In an agency relationship, "the agent has the power to bind the principal, and the principal has the right to control the agent. The existence of an agency relationship depends primarily upon the right of the principal to control the agent." *Tiefenthaler v. Tiefenthaler,* Fairfield App. No. 02 CA 29, 2002 WL 31656215, at *2 (citing *Amson v. Gen. Motors Corp.*, 377 F. Supp. 209 (N.D. Ohio 1974)). *See also Broock v. Nutri/System, Inc.*, 654 F. Supp. 7, 8 (S.D. Ohio 1986).

Plaintiffs have not shown the existence of an agency relationship. There is nothing in the contract with NLPA showing that the parties intended to form a principal/agent relationship for purposes of selecting an attorney. To the contrary, the agreement explicitly provides, "WE ARE entering into this agreement because You wish to use NLPA's services *as consultant to Your licensed attorney* in connection with the pursuit of legal remedies on Your behalf. . . ." (Doc. 30, Exh. 1) (emphasis added). The agreement also provides:

> You understand that NLPA is not representing you as counsel and, therefore, cannot file any documents in any court, and that no representations concerning NLPA's services, other than those outlined herein, have been made to You.

(Doc. 30, Exh. I at ¶f). The agreement further provides:

> You understand that NLPA is owned by Robert Ratliff, Esq., and Matthew M. Robinson, Esq. Although Messrs. Ratliff and Robinson may be available to provide legal representation to You should You so desire to retain them for that purpose, that *You have the right to retain counsel of Your own choice* and there is no requirement that You utilize Messrs. Ratliff, or Robinson as your counsel.

18

(Id. at ¶l) (emphasis added). The agreement also clarifies: "You further understand that should You want to implement recommendations made in evaluation, it will be necessary for You to arrange for counsel to represent you in court for purposes of the recommendation." (Id. at ¶o). Moreover, the correspondence between the parties makes it clear that plaintiffs were free to retain or not to retain Ratliff as they saw fit. Plaintiffs' allegations that NLPA and Robinson were their agents, standing alone, are insufficient to establish an agency relationship in this case. In the absence of such relationship, neither Robinson nor NLPA were under a duty to find "an appropriately qualified lawyer" for Lamont or to disclose any particular facts about any lawyers they may have recommended. Therefore, defendants' motion should be granted on plaintiffs' fraudulent non-disclosure claim.

**Other "Legal Claims"**

Plaintiffs assert numerous other state law legal claims including "fraud, fraudulent inducement, fraudulent concealment, deception, deceptive advertising, deceptive sales practices, selective services, breach of contractual/agreement obligation(s), false representation, impairing obligation of contract, unconscionability, bilking, professional gross neglect of duties, breach of trust, tangible personal property injury, emotional injury, inter alia, extortion, devil on the neck; deviling." (Doc. 1 at 3). With the exception of the breach of contract claim, which will be discussed below, plaintiffs' complaint and supplements thereto fail to allege facts which support their multiple theories of recovery. This "shotgun" approach to pleading, *i.e.*, "throwing everything against the wall and hoping some sticks," *Krusinski v. U.S. Dept. of Agriculture*, No. 92-4026, 1993 WL 346858, at *5 (6th Cir. Sept. 10, 1993), has been criticized by this and other courts. *See Lasson v. Brannon & Associates*, No. 3:07cv0271, 2008 WL 471537, at *4 (S.D.

19

Ohio Feb. 15, 2008) (citing *Byrne v. Nezhat,* 261 F.3d 1075, 1129 (11th Cir. 2001)).[3] *See also BMC Industries, Inc. v. Barth Industries, Inc.,* 160 F.3d 1322, 1327, n. 6 (11th Cir. 1998), *cert. denied,* 526 U.S. 1132 (1999); *Cramer v. Florida,* 117 F.3d 1258, 1263 (11th Cir. 1997). While the Court recognizes that pro se pleadings are entitled to a liberal construction, plaintiffs' allegation of a multitude of potential causes of action improperly places the onus on the Court to sift through the pleadings to determine which facts are material to the particular causes of action asserted in plaintiffs' "Legal Claims." Plaintiffs have failed to plead the necessary elements of these claims and the facts in support thereof. Therefore, dismissal is appropriate. *See Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003).

## **Breach of Contract**

To the extent plaintiffs seek to invoke the diversity jurisdiction of the Court with regard to their state law breach of contract claim, the complaint reveals such jurisdiction is lacking. A district court has jurisdiction over a suit between citizens of different states when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiffs fail to show their breach of contract claim satisfies the $75,000 amount-in-controversy requirement for this Court's exercise of diversity jurisdiction.

---

[3]The *Lasson* Court noted:

> In addition to watering down the rights of the parties to have valid claims litigated efficiently-whether the plaintiff's or the defendant's-shotgun pleadings wreak havoc on the judicial system. Cases framed by shotgun pleadings consume an inordinate amount of a court's time. As a result, justice is delayed, if not denied, for litigants who are standing the queue waiting to be heard. Their impressions of the court's ability to take care of its business can hardly be favorable. As the public becomes aware of the harm suffered by the victims of shotgun pleading, it, too, cannot help but lose respect for the system.

*Lasson,* 2008 WL 471537 at *4-5 (quoting *Byrne,* 261 F.3d at 1129).

In determining the amount in controversy, the Court "should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Massachusetts Casualty Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (quotation omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005). In applying the legal certainty test, courts have found a legal certainty that more than the jurisdictional amount could not be recovered where the applicable state law barred the type of damages sought by the plaintiff. *See Wood v. Stark Tri-County Building Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973) (citing *Vance v. Vandercook Co.*, 170 U.S. 468 (1898) (applicable state law did not permit punitive damages in a trover action); *Parmalee v. Ackerman*, 252 F.2d 721, 722 (6th Cir. 1958) (emotional distress damages not recoverable under Ohio law where no allegation of intent)).

Here, plaintiffs seek compensatory damages "in excess of $14,000," damages for emotional injuries, and punitive damages of $100,000.00. (Doc. 1 at 4, 23).

Plaintiffs cannot recover damages for emotional injuries resulting from a breach of contract unless "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 230, 754 N.E.2d 785, 788 (2001). *See also EEOC v. Honda of America, Mfg., Inc.*,No. 2:06-cv-233, 2007 WL 1541364, at *7 (S.D. Ohio May 23, 2007); *Powell v. Grant Medical Center*, 148 Ohio App.3d 1, 10, 771 N.E.2d 874, 881 (10th Dist. 2002). Compensatory damages for emotional injuries are not applicable here because a serious emotional disturbance is not likely to follow the non-performance of a typical business contract. The alleged failure of the defendants

21

to carry out proper legal research under the contract is not enough to satisfy the requirement for compensatory damages for emotional distress.

After a thorough review of the pleadings, it is clear that only the claim for compensatory relief for $14,000–money allegedly paid pursuant to the contract to NLPA and Attorney Ratliff–is supported by sufficient facts to go towards satisfying the amount-in-controversy requirement. Thus, to meet the jurisdictional amount to confer diversity jurisdiction, plaintiffs would have to recover at least $61,000.00 in punitive damages. However, as explained below, it appears to a legal certainty that plaintiffs cannot obtain punitive damages in this matter.

Plaintiffs essentially allege a cause of action for breach of contract. (Doc. 1). However, "[n]o punitive damages are available for breach of contract in Ohio." *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922). Furthermore, punitive damages are not recoverable in an action for breach of contract "irrespective of the motive on the part of the defendant and no matter how willful the breach." *Kruse v. Vollmar,* 83 Ohio App.3d 378, 386, 614 N.E.2d 1136, 1141-1142 (1992) (citing *Digital & Analog Design Corp. v. North Supply Co.*, 44 Ohio St.3d 36, 45-46, 540 N.E.2d 1358, 1366-1367 (1989)). *See also Saberton v. Greenwald,* 146 Ohio St. 414, 426, 66 N.E.2d 224, 229 (1946); *Ketcham,* 104 Ohio St. at 377-78, 136 N.E. at 146.

"An exception to this general rule is when the actions which constitute the breach of contract also amount to an independent, willful tort. If the necessary showing of malice is present, punitive damages may be recovered." *Spalding v. Coulson*, 104 Ohio App.3d 62, 78, 661 N.E.2d 197, 207 (1995). *See also Kruse*, 83 Ohio App.3d at 386, 614 N.E.2d at 1141-1142; *Ali v. Jefferson Ins. Co.*, 5 Ohio App.3d 105, 107, 449 N.E.2d 495, 497-498 (1982); *Sweet v. Grange Mut. Cas. Co.*, 50 Ohio App.2d 401, 406-407, 364 N.E.2d 38, 41-42 (1975). "Actual

22

malice consists of either a state of mind characterized by hatred, ill will or a spirit of revenge or a conscious disregard for the rights and safety of others which results in a strong probability of substantial harm to the affected persons." *Spalding v. Coulson*, 104 Ohio App.3d at 78, 661 N.E.2d at 207. *See also Arthur Young & Co. v. Kelly*, 88 Ohio App.3d 343, 352, 623 N.E.2d 1303, 1308-1309 (1993). Likewise, punitive damages may be awarded in tort cases upon a showing of fraud or insult. *Ali v. Jefferson Ins. Co.*, 5 Ohio App.3d 105, 107, 449 N.E.2d 495, 497-498 (1982).

As explained above, plaintiffs have failed to establish a claim for fraud. In addition, plaintiffs have alleged no facts whatsoever tending to show the existence of an independent tort which would justify an award of punitive damages in this case. Accordingly, it appears to a legal certainty that plaintiffs cannot in good faith claim the jurisdictional amount because there is no basis in Ohio law for the recovery of punitive damages in this case. Accordingly, the Court lacks subject matter jurisdiction on the basis of diversity of citizenship. Plaintiffs' breach of contract claim should be dismissed without prejudice to refiling in state court.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff Lamont Douglas's motion to supplement RICO claim (Doc. 26) be denied.

2. Defendants' motion to dismiss and/or for summary judgment (Doc. 25) be granted.

Date: 9/2/09

Timothy S. Hogan
United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LAMONT O. DOUGLAS, et al.,
    Plaintiffs

    v.

ROBERT A. RATLIFF, et al.,
    Defendants

Case No. 1:09-cv-060
Weber, J.
Hogan, M.J.


## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lamont O. Douglas
20a-70A
Red Onion State Prison
P.B. Box 970
Pound, V.A. 24279

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☑ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7002 3150 0000 8388 4209

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Charmaine Douglas
Carlos Davis
7312 Wessex Drive
Temple Hill, MD 20748

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☑ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7002 3150 0000 8388 4193

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:09 cv 60  (Doc. 37)